Pennsylvania Railroad Co. *v.* Thompson.

THE PENNSYLVANIA RAILROAD COMPANY and WILLIAM H. BANNARD, appellants,

*v.*

JOHN B. THOMPSON, respondent.

1. If a railroad company is enjoined to abate a nuisance, the court of chancery will not entertain the excuse that its agents and servants have disobeyed the instructions given them to remove it. The company must obey the order of the court even if it has to discontinue the running of trains upon its road. Until the injunction is modified or removed, the company must conform to it.

2. If the employe of the company exercises the authority with which he is clothed by the company, in good faith, with an intention and purpose to the best of his ability to enforce obedience to the order of the court, he will not be in contempt.

On appeal from an order advised by Vice-Chancellor Pitney, whose opinion is reported in *Thompson* v. *Pennsylvania R. R. Co., 3 Dick. Ch. Rep. 105.*

*Mr. Samuel H. Grey,* for the appellants.

*Mr. John W. Wartman,* for the respondent.

The opinion of the court was delivered by

VAN SYCKEL, J.

The respondent obtained a final decree in this court against the Pennsylvania Railroad Company, forever restraining the said company from operating its engines in front of, or near to, the respondent's house, at the southeast corner of Fourth street and Bridge avenue, in the city of Camden, for the purpose of distributing its cars and making up trains as aforesaid, and from using the southernmost track in front of, or near to, said dwelling, to stand, put or place cars laden with cattle, sheep or hogs. A copy of this decree was served upon the said William H. Bannard, superintendent of the said road. It being alleged that the injunction

had been violated and disregarded, a rule was granted by the chancellor and served upon said Bannard, to show cause why. Bannard be not punished for contempt in disobeying the order of said court of chancery. The case was heard upon evidence taken under this rule, and thereupon the chancellor decreed that said Bannard was guilty of contempt of court, and adjudged that he do pay to Thompson's counsel the costs of the petition and proceedings, and a counsel fee of $100, and that, unless such payment was made within five days, the said Bannard be committed to the county jail until he shall pay the same. This decree is the subject-matter to be reviewed in this case.

I agree with the learned vice-chancellor, that if A be ordered to pay a sum of money, and being able to do so, fails to make the payment, it is immaterial what motive prompted the failure, or whether he intended any disrespect to the court. So, if A be enjoined from so using a dam on his own land as to flood B's land, and by his failure to observe the injunction, the land of B is flooded. In such case it is not a compliance with the order by A to say: " I will do what I can to protect the land of B." A is bound to obey the order of the court. The injury would be averted by the taking down of the dam, which is within his power, and if he cannot avert the harm in any other way, the court will listen to no excuse for his default.

That is the principle established by the cases cited in the opinion of the vice-chancellor. *Quackenbush* v. *Van Riper*,. *2 Gr. Ch. 350*; *McClure* v. *Gulick*, *2 Harr. 340*; *State* v. *Gulick*, *2 Harr. 435*; *Den.* v. *Hendrickson, 3 Harr. 366*.

These cases, however, recognize the propriety of discharging the defendant from the consequences of his apparent contempt, if he can show clearly his inability to comply with the order of the court.

In *Spokes* v. *Banbury Board of Health*, L. R. (*1 Eq. Cas.*) *42*, the defendants had completed a system of sewerage, whereby all the drainage water of the district was made to flow into the river Cherwell, whereby the stream was polluted and the plaintiff deprived of his rightful use of the water. A decree was obtained by him restraining the defendants from permitting sew-

age, or water polluted with sewage, from passing through the drains under their control in such a way as to pollute the water and render it unfit for the use of the plaintiff.

The injunction was not obeyed; the excuse set up by the defendants was, that they had used every known means to deodorize the sewage, and that they could not stop its flow into the river without creating a great nuisance in the town of Banbury.

Sir W. Page Wood, V. C., in delivering the opinion of the court, said: "The order of the court was plain and distinct that the defendants shall not, after a given day, permit any sewage to pass through channels under their control; that it appeared to be within their power to obey the injunction, and they were bound to do so."

They were, therefore, adjudged guilty of willful contempt and sequestration ordered to issue.

It is clear, therefore, that in a proceeding against the Pennsylvania Railroad Company itself to enforce obedience to the injunction, this court would refuse to entertain the excuse that its agents and servants have disobeyed the instructions given them to abate the nuisance to Thompson.

The company was constrained to observe the order, even if it has to discontinue the running of trains upon its road.

Until the injunction was removed or modified, the company was bound to conform to it, and no excuse, such as inconvenience or negligence of employes, could be listened to for a moment.

In a proceeding, like the one before us, against an employe of the corporate defendant, an element enters into the discussion which is not present in aid of the corporation.

The question now arises whether Bannard, in good faith, exercised the power which he possessed to remove the injury to Thompson, against which the restraining order of the court of chancery was directed. If he was without power he cannot be in contempt. *Bate Refrigerator Co.* v. *Gillett, 24 Fed. Rep. 696.*

Bannard, in his evidence, testifies that he is superintendent of the Amboy Division of the road, and that the routine of his duties include the operation, day by day, of the division in his charge.

Pennsylvania Railroad Co. *v.* Thompson.

In the discipline of employes and in the general handling of the business of the road he is unrestricted, except as to expenses.

It appears that Bannard issued, under his name as superintendent, a notice to conductors, enginemen and workmen at Camden, requiring them to obey the injunction, which notice was duly posted and brought to the knowledge of such employes of the company.

The drillers in the Camden yard were also personally instructed by Bannard, by explaining to them in the greatest detail the terms of his notice, advising them what would be the consequences of disobedience.

These instructions were followed up by an order to the day gatemen and the night gatemen at Fourth street and Bridge avenue to make a daily and nightly report of all engines and trains that disobeyed the order of injunction. The switchmen, day and night, between Second and Third streets, on Bridge avenue, who could see what happened at Fourth street, were also instructed to make a daily and a nightly report to the yardmaster of any violation of the injunction; all of which reports were to be sent regularly to the said superintendent. The injunction, so far as the superintendent was advised, was violated in a very few instances. In those cases he says the guilty employes were severely reprimanded and threatened with suspension if they offended again. He says he does not remember that an employe disobeyed a second time after he understood his duty.

The question is, whether he exercised the authority with which he was clothed by the company, in good faith, with an intention and purpose, to the best of his ability, to enforce obedience to the mandate of the court?

Any appearance of evasion on his part, or failure to do what might reasonably be required of him, would be fatal to his claim for relief.

In my judgment, no want of an honest intention and earnest effort to secure obedience to the injunction can be justly imputed to him, and, therefore, the consequences of failure should not be

21

visited upon him personally. For such failure the company must respond and not its servant.

The decree below should be reversed, with costs.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Depue, Magie, Reed, Scudder, Van Syckel, Bogert, Brown, Clement, Krueger, Smith, Whitaker—12.